IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

**MARVELL HOWARD**                                                    **PLAINTIFF**

**VS.**                                           **CASE NO. 1:13-cv-00154-MPM-DAS**

**MISSISSIPPI STATE UNIVERSITY; AMY
TUCK, In Her Official and Individual Capacity;
and GEORGE DAVIS, In His Official and
Individual Capacity**                                          **DEFENDANTS**

## MEMORANDUM OPINION

Before the court are defendant Mississippi State University's ("MSU") and defendants Amy Tuck's ("Tuck") and George Davis' ("Davis") motions for summary judgment [44], [46]. Plaintiff, Marvell Howard, has responded, and defendants have replied. Having considered the memoranda and relevant law, the court is prepared to rule.

Plaintiff Marvell Howard claims that MSU and two of its employees, Amy Tuck and George Davis, discriminated against him on the basis of race in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964. More specifically, Mr. Howard claims that MSU 1) improperly classified him as "non-exempt" for purposes of the Fair Labor Standards Act ("FLSA"); 2) paid him "only slightly more" than an employee who reported to him, when other skilled craft supervisors at MSU made substantially more than the employees under their supervision; 3) paid other skilled craft supervisors more than him; 4) gave another employee a raise as compensation for taking on extra duties in 2009, but did not give him a raise for temporarily taking on some of those duties; and finally 5) treated Howard differently in responding to pay concerns than a similarly situated white employee.

1

**FACTS**

Mr. Howard, who is African-American, began working at MSU in 1991 as a building maintenance repairer. In 1997, he was promoted to Assistant Building Maintenance Supervisor. In 2005, Mr. Howard was promoted to the position of Zone Maintenance Leader. On January 1, 2009, following a Facilities Management services reorganization, Mr. Howard was reassigned to a newly created position of Carpentry Supervisor, where he was and is generally responsible for oversight of the carpenters within the group and for training, assisting, and assigning tasks to the other carpenters.

MSU's Facilities Management services' reorganization in 2008 and 2009 transitioned the university from a "zone maintenance" concept to a functional support model. Under the zone maintenance concept, MSU was divided into different zones, overseen by a zone leader, with each zone assigned a set of skilled craft employees, e.g., a painter, an electrician, an HVAC worker, a carpenter, and custodial workers. Each zone was responsible for several buildings.

Under the new functional support model, instead of having multiple zones, MSU grouped workers according to their roles. For example, all the carpenters were grouped together and would provide carpentry services across the campus.

Along with this reorganization of the Facilities Management service, MSU also created a new salary structure for Facilities Management. This new salary structure assigned rates of pay to the positions within Facilities Management based upon MSU's Human Resources department's determination of the market demand for employees of each type that would apply to all persons holding the job regardless of years in service or other criteria. As a result of this restructuring, some employees would receive raises and others would see their compensation decrease. However, MSU decided that no employee's pay would be reduced as a part of the new

compensation structure, so MSU allowed those employees whose pay would have decreased to keep their existing, pre-restructuring, rate of pay.

After these structural changes, in addition to Mr. Howard being reassigned to the newly created position of Carpentry supervisor, Mr. Howard's coworker and previous supervisor, Roger Johnston, who is white, was assigned the newly created position of Building Services supervisor. Mr. Howard supervised the Carpentry group, which fell under the Work Management division supervised by David Canterbury. The Work Management Supervisor (Mr. Canterbury) and Building Services Supervisor (Mr. Johnston) both oversaw multiple divisions and reported to George Davis, the Associate Director of Facilities.

Under these new positions, Mr. Howard's pay increased from $39,775.00 to $48,610.00 and Mr. Johnston's pay increased from $50,164.00 to $56,337.00. On October 19, 2009, Mr. Johnston complained to Human Resources about pay inequity between his pay and the Electrical and Plumbing supervisors. In his emailed complaint, Mr. Johnston stated that since the restructure, he was supervising "three different shops (Building Maintenance Interior, Upholstery, and Key Shop)" and he had "more employees to supervise than the Electrical and Plumbing Shops combined." Human Resources responded that they could not review his pay until "proper approval has been given from the VP." Mr. Johnston then submitted a written request for reevaluation of his pay grade to the vice president. Mr. Johnston's pay was then increased from $56,337.00 to $65,000.

In September of 2012, Mr. Howard complained to MSU's Human Resources department, under a new Chief Human Resources Officer than when Johnston complained, about pay inequities between his pay and that of other skilled craft supervisors. He also complained that the difference between his salary as a supervisor and the master level employee beneath him was

3

less than the difference between other skilled craft supervisors and the master level employees beneath them. On September 28, 2012 in response to Mr. Howard's email, Judy Spencer, the director of Human Resources, explained that:

> You have stated some facts below based on your own research and have made some assumptions. You also compare positions that appear to be the same from your viewpoint, but actually require different knowledge, skill, and ability (example: comparing yours and other positions with an Electrical Supervisor) and are substantially different. You have also made some assumptions about additional compensation for additional duties. These are your assumptions and do not exactly match our records…I am not sure what your expectations are at this point or what you mean by providing a remedy of the situation soon. If you will clarify this request, I will make sure you get an answer.

Dkt. 44, Exhibit 24, Email Communications.

Mr. Howard did not follow up with Ms. Spencer. Instead, on October 4, 2012, Mr. Howard filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging that his "salary and terms and conditions of employment are substantially different from those of other skilled craft supervisors who have the same or similar duties and responsibilities." Dkt. 44, Ex. 16, Charge of Discrimination. Mr. Howard advanced three complaints. First, he complained that he should have been classified as an "exempt" employee rather than a non-exempt employee for FLSA purposes. Second, he complained that he did not receive an explanation "why [he is] not an exempt employee and why [his] salary is substantially lower than the salaries of the other skilled craft supervisors." *Id*. Finally, he complained that his "salary is only slightly more than that of the master level employee under my supervision, while a substantial difference exists between the salaries of the other skilled craft supervisors and the master level employee under their supervision." *Id*.

**STANDARD OF REVIEW**

Summary judgment is appropriate when there is "no genuine issue of material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The facts and evidence are taken in a light most favorable to the non-moving party. *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 386 (5th Cir.2007).

A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). Summary judgment is appropriate if "critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the non-movant." *Armstrong v. City of Dallas*, 997 F.2d 62 (5th Cir. 1993). A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but … must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, at 248. If the nonmoving party fails to meet this burden, the motion for summary judgment must be granted.

**ANALYSIS**

Howard asserts claims under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981 against Mississippi State University, Amy Tuck, and George Davis. In addition to their own motion, Amy Tuck and George Davis have joined MSU's summary judgment motion. The court will first analyze Howard's claims against Davis and Tuck before proceeding to the claims against MSU.

**I. Claims against Davis and Tuck**

As a preliminary matter, the court notes that, in a hearing on the summary judgment motion on April 20, 2015, Mr. Howard expressed his intent to drop Ms. Tuck from the law suit. This court will honor that intent, and Ms. Tuck will be dismissed from this suit.

### a. § 1981 Claims

42 U.S.C. § 1981 imposes liability for private actors who take racially discriminatory actions in employment decisions. § 1983 has generally been understood to be the mechanism through which a plaintiff may sue state actors for violations of § 1981, and it was the law and practice of the 5th Circuit to dismiss those cases that failed to plead violations of § 1981 through § 1983. However, in *Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346 (2014), the Supreme Court reversed that precedent holding that "no heightened pleading rule requires plaintiffs seeking damages for violations of constitutional rights to invoke § 1983 expressly in order to state a claim." *Id*. at 347. The Court then ruled that the petitioners "should be accorded an opportunity to add to their complaint a citation to § 1983." Mr. Howard has not sought leave from this court to amend his pleadings to include a citation to § 1983. However, in light of this opinion, and out of an abundance of caution, this court will not dismiss plaintiff's § 1981 claims for failure to plead through § 1983 and will address plaintiff's § 1981 claims on their merits.

Within the Fifth Circuit, there is "some doubt as to whether a § 1981 claims lies against 'an individual defendant not a party to the contract giving rise to the claim.'" *Lofton v. City of W. Point, Miss.*, No. 1:10CV282-SA-DAS, 2012 WL 1135862, at *11 (N.D. Miss. Apr. 4, 2012)(citing *Felton v. Polles*, 315 F.3d 470, 480 (5th Cir. 2002). Section 1981 centers around the contractual relationship of the parties and "would seem to permit a cause of action against the contracting parties only." *Miller v. Wachovia Bank, N.A.,* 541 F. Supp. 2d 858, 861 (N.D. Tex. 2008).

6

Fifth Circuit precedent indicates that a third-party may be liable under § 1981 only in certain circumstances. In *Faraca v. Clements*, 506 F.2d 956 (5th Cir. 1975), the court upheld individual damages against the director of the Georgia Retardation Center after the center refused to hire a plaintiff married to a black woman. *Id.* at 958-960. The Fifth Circuit later narrowed this holding in *Bellows v. Amoco Oil Co.*, 118 F.3d 268, 274 (5th Cir. 1997), stating "Since *Faraca,* this Court has not offered any opinion as to whether *all* third party interference claims are actionable under section 1981, and we decline to rule on this issue today." *Id.* at 274 (emphasis in original).

The Fifth Circuit has therefore recognized that, generally, a third party can be held liable under § 1981 only when the party is "essentially the same" as the State with regards to the conduct at issue. *Foley v. Univ. of Houston Sys.*, 355 F.3d 333, 337 (5th Cir. 2003) (upholding individual liability against fellow employees who exercised control over employment decisions at issue.); *Felton v. Polles*, 315 F.3d 470, 480-81 (5th Cir. 2002) ("In the light of *Bellows*' limited reading of *Faraca*, it would appear Thomas could *only* be amenable to § 1981 liability *if he* were "essentially the same" as the State for purposes of the complained-of conduct.) To be considered "essentially the same" as the State, the employee must exercise control over the plaintiff's position.

Howard has alleged no facts under which Davis could be considered "essentially the same" as the State. The Complaint alleges no specific facts as to how Davis himself exercised control over his compensation. Howard admits that it is Human Resources, a department Davis is not under, that made the exempt/non-exempt classification. Dkt. 46, Ex. 2, Howard Deposition, at 51-52.  Howard admits that he does not know any role that Davis plays in setting his salary. *Id.* at 66. Once again, they are set by the University's Human Resources department. Dkt. 46, Ex. 1,

Spencer Affidavit, at 3. Accordingly, Howard cannot maintain his § 1981 claims against Mr. Davis in either his individual or official capacity.

### b. Title VII Claims

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2. Howard wishes to impose individual and official liability against Davis for discrimination under Title VII.

Under Title VII, the term "employer" is defined as a "person engaged in an industry affecting commerce who has fifteen or more employees" or "any agent of such a person." 42 U.S.C. § 2000(b). The Fifth Circuit, however, precludes individual liability for agents. *Umano v. Plano Independent School Dist.*, 457 F.3d App'x 422, 425 (5th Cir. 2012); *Foley v. Univ. of Houston Sys.,* 355 F.3d 333, 340 n. 8 (5th Cir. 2003)("[R]elief under Title VII is only available against an employer, not an individual supervisor or fellow employee."); *Indest v. Freeman Decorating, Inc.,* 164 F.3d 258, 262 (5th Cir. 1999) ("[T]his circuit does not interpret [§ 2000e-2] as imposing individual liability for such a claim.").

The phrase "any agent" is construed liberally. *Harvey v. Blake*, 913 F.2d 226, 227 (5th Cir. 1990). When an agent is delegated traditional employer rights, such as hiring and firing, agents qualify as the employers. *Id.* The agent's liability, however, will lie only in her official capacity. *Id*. Further, a plaintiff cannot maintain Title VII claims against both the employer and the employer's agent, because an employer would face double liability for the same action. *Ingest*, 165 F.3d at 262. Congress's intent in including "any agent" within the definition of

employer was to "incorporate *respondeat superior* liability into Title VII" *Id.* (citing *Grant v. Lone Star Co.*, 21 F.2d 64, 652 (5th Cir. 1994).

Howard may only maintain his action against MSU and Davis if Davis qualifies separately as an employer under Title VII. *See Grant,* 21 F.2d at 652 (holding individual who does not meet definition of employer under Title VII not liable); *Carpenter v. Mississippi Valley State Univ.*, 807 F. Supp. 2d 570, 588 (N.D. Miss. 2011). To meet the definition of an employer under Title VII, the court must first determine whether the defendant meets the statutory definition of §2000e(b). *Muhammad v. Dallas Cnty. Cmty. Supervision & Corr. Dep't*, 479 F.3d 377, 380 (5th Cir. 2007). There is no evidence in the record that Davis qualifies as an employer under the statute, because there is no evidence that he individually employs at least 15 employees.

Because Title VII only imposes individual liability on employers, a definition Davis does not meet, he cannot be held liable in his individual capacity. Further, because a plaintiff cannot maintain a Title VII action against an employer and its agents in their official capacity, Howard's Title VII claims against Davis will be dismissed.

**II. Claims against MSU**

With all claims against Tuck and Davis dismissed, the court proceeds to analyze whether Howard's claims against MSU should survive summary judgment. Because Title VII and § 1981 claims require the same proof to establish liability, Howard's discrimination claims can be analyzed under the Title VII framework. *See Criner v. Tex.—N.M. Power Co.*, 470 F. App'x 364, 370 n.3 (5th Cir. 2012) (per curiam) (*citing Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 422 n.1 (5th Cir. 2000)). Title VII makes it unlawful "for any employer…to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his

9

compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Intentional discrimination can be proven by either direct or circumstantial evidence. *Crawford v. U.S. Dept. of Homeland Sec.*, 245 Fed.Appx. 369, 378 (5th Cir. 2007). Direct evidence must prove the fact in question without inference or presumption. *Id.* Where there is no direct evidence of discrimination, the court must follow the *McDonnell Douglas* framework to determine whether the claims of discrimination can survive. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Under the *McDonnell Douglas* framework, the plaintiff must first prove a prima facie case of discrimination by showing that (1) he is a member of a protected class; (2) he was qualified for the position; (3) he was the subject of an adverse employment action; and (4) he was treated less favorably than similarly situated employees under nearly identical circumstances. *See Lee v. Kan. City S. Ry.*, 574 F.3d 253, 259 (5th Cir. 2009); *see also McDonnell Douglas*, at 802. Should the plaintiff establish a prima facie case, the burden shifts to the defendant to provide a legitimate, non-discriminatory reason for the challenged decisions. *Septimus v. Univ. of Houston*, 399 F.3d 601, 609 (5th Cir. 2005). Once the defendant provides a legitimate, nondiscriminatory reason, the plaintiff must then show that a genuine issue of material fact whether the legitimate reasons given by the defendant are a pretext for discrimination. *Id.*

### 1. Prima Facie Case

To survive summary judgment, Mr. Howard must first prove a prima facie case of discrimination by showing that (1) he is a member of a protected class; (2) he was qualified for the position; (3) he was the subject of an adverse employment action; and (4) he was treated less favorably than similarly situated employees under nearly identical circumstances. *See Lee v.*

*Kan. City S. Ry.*, 574 F.3d 253, 259 (5th Cir. 2009); *see also McDonnell Douglas*, at 802. Mr. Howard, in his Response to Motion for Summary Judgment, seems to have abandoned the theory that he suffered discrimination when MSU classified him as a non-exempt employee rather than an exempt employee. He does not mention this claim anywhere in his brief. He also seems to have abandoned the theory that he was discriminated against when the difference between his salary and the master-level employees under him was not as great as the difference between other supervisors and the master-level employees beneath them.

Instead, Mr. Howard claims to have established a prima facie case on different grounds. He claims that he suffered an adverse employment action "when he was paid less than similarly situated employees," and that he was treated less favorably than similarly situated employees outside the protected group under nearly identical circumstances when he was "treated less favorably than Johnston, who is white, when he complained about pay inequities." MSU concedes that Mr. Howard is a member of a protected class and that Mr. Howard was qualified for his position. While the court has its doubts about the existence of an "adverse employment action," neither Mr. Howard in his response brief nor MSU in its reply brief give much attention to this prong of the prima facie case. For the purposes of the following analysis, it will assume Mr. Howard did, in fact, suffer an adverse employment action. The court's analysis begins and ends with the last prong of the prima facie discrimination case: that Mr. Howard was treated less favorably than similarly situated employees outside the protected group under nearly identical circumstances.

MSU argues that Mr. Howard has failed to establish that he was treated less favorably than similarly situated employees outside the protected group under nearly identical circumstances. In *Lee*, the 5th Circuit explained the "similarly situated" requirement:

11

> Employees with different supervisors, who work for different divisions of a company or who were the subject of adverse employment actions too remote in time from that taken against the plaintiff generally will not be deemed similarly situated. Likewise, employees who have different work responsibilities…are not similarly situated.

*Lee*, at 259. In the same case, the court went on to explain that "the employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person." *Id.* at 260. "Nearly identical" is not synonymous with "identical." *Id*.

Mr. Howard argues he and Mr. Johnston are similarly situated employees. This court does not agree. First, Mr. Johnston and Mr. Howard did not have the same job or responsibilities. Mr. Howard seems to rely solely on the title of "supervisor" to show that he and Mr. Johnston were similarly situated. Titles alone do not prove similarity. A more intensive fact inquiry is required. Mr. Johnston, as Building Service Supervisor, was tasked with more supervisory responsibility. Mr. Johnston supervised seventeen employees over three departments (Exterior Building Maintenance, Interior Building Maintenance, and the Key Shop), whereas Mr. Howard only supervised six employees in the Carpentry department, which fell under the Work Management Supervisor, David Canterbury.

Second, Mr. Howard and Mr. Johnston did not share the same supervisor. Mr. Canterbury (Work Management Supervisor) and Mr. Johnston (Building Services Supervisor) reported to George Davis (Associate Director of Facilities). Mr. Howard, on the other hand, reported to Mr. Canterbury.

Third, there was a significant time gap between the supposed less-favorable treatment of Mr. Howard's pay complaint and the treatment of Mr. Johnston's pay complaint. Three years passed between the two events, during which a new Chief Human Resources Officer (Judy Spencer) assumed her position. The time between the two events and the difference in personnel handling the claim weighs in favor of Mr. Howard and Mr. Johnston not being similarly situated.

The above facts establish that Mr. Johnston and Mr. Howard were not similarly situated employees. Mr. Howard has failed to create a genuine issue of material fact that he was treated less favorably than similarly situated employees outside of the protected group. Therefore, he has failed to prove a prima facie case sufficient to survive summary judgment.

For the foregoing reasons defendants' motions for summary judgment [44] and [46] will be GRANTED. A separate judgment will be entered this date, pursuant to Fed. R. Civ. P. 58.

So ORDERED this the 23rd day of April, 2015

**/s/ MICHAEL P. MILLS**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF MISSISSIPPI**